UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

COMMERCE AND INDUSTRY INSURANCE COMPANY and GRANITE STATE INSURANCE COMPANY

Plaintiffs

v.

Civil Action No. 4:23-cv-18-RGJ

J. CRAIG RIDDLE COMPANY and JAMES L. RIDDLE

Defendants

\* \* \* \* \*

# MEMORANDUM OPINION AND ORDER

Commerce and Industry Insurance Company ("Commerce") and Granite State Insurance Company ("Granite State") (collectively, "Plaintiffs") initiated this lawsuit alleging (1) negligent misrepresentation, (2) intentional misrepresentation, and (3) insurance fraud against J. Craig Riddle Company[1] ("Riddle Company") and James L. Riddle ("Riddle") (collectively, "Defendants"). [DE 1 at 8–10]. Defendants moved to dismiss Count III under KRS 304.47-020, Kentucky's fraudulent insurance acts statute. [DE 20]. Plaintiffs responded and Defendants replied. [DE 25; DE 26]. Accordingly, this matter is ripe for adjudication. For the reasons below, the motion to dismiss [DE 20] is **GRANTED**.

**I.      Background**

Commerce and Granite State are both insurance companies that offer property and casualty insurance, including workers' compensation insurance. [DE 1 at 3]. Riddle Company was an insurance agency in Madisonville, Kentucky, where Riddle worked as an insurance agent. [*Id.*]. One of Riddle's clients was Star Mine Services, Inc. ("Star Mine"). [*Id.*]. Plaintiffs allege that for

---

[1] This party was first identified as "JCR, Inc." [*See* DE 1]. But, with the parties in agreement, the Court ordered "J. Craig Riddle Company shall be substituted for Defendant JCR, Inc." [DE 29 at 147].

1

three consecutive workers' compensation policy periods, a majority of Star Mine workers were misclassified under class code 5213 instead of 1016. [*Id.* at 5]. Two of these policies were issued by Commerce, and the third was issued by Granite State. [*Id.* at 3]. Plaintiffs assert that Riddle knowingly assisted Star Mine in misclassifying employees, and that the misclassification resulted in Star Mine paying $2,075,508 less in premiums to Plaintiffs than was required. [*Id.* at 5, 7–8].

## II.   Discussion

Defendants move to dismiss Count III or, in the alternative, for partial summary judgment. [DE 20-1 at 70]. If Defendants' basis for the motion is correct, then "no law supports the claim made" and Count III must be dismissed. *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–64 (2007)). For that reason, the Court finds the motion is appropriate to consider as a motion to dismiss and applies the standard under Federal Rule of Civil Procedure 12(b)(6).

### A.  Standard

Rule 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint

suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotations omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claim[s] made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n*, 570 F. App'x at 487 (citing *Twombly*, 550 U.S. at 561–64).

### B. The Kentucky Fraudulent Insurance Acts Statute

Defendants move only to dismiss Count III, which Plaintiffs brought under Kentucky's fraudulent insurance acts statute, KRS 304.47-020 ("the FIA statute"). Defendants' sole basis for the motion is that the version of the FIA statute in effect when the alleged conduct took place required a criminal adjudication of guilt before a civil suit could be brought against a defendant. [DE 20-1 at 71]. The parties agree that the relevant portion of the statute in effect at the time of the alleged conduct reads as follows:

> Any person damaged as a result of a violation of any provision of this section *when there has been a criminal adjudication of guilt* shall have a cause of action to recover compensatory damages, plus all reasonable investigation and litigation expenses, including attorneys' fees, at the trial and appellate courts.

[DE 20-1 at 71 (emphasis added); DE 20-2 at 86, 91]. The current version of the statute—as amended in 2018 and quoted in the complaint—simply deletes the phrase "when there has been a criminal adjudication of guilt," leaving the rest of the statute unchanged. [DE 20-1 at 72]. Because the complaint does not allege a criminal adjudication of guilt, the outcome of Defendants' motion turns on which version of the statute applies to Count III.

Defendants argue that KRS 446.080(3), which prohibits retroactive construction of a statute "unless expressly so declared," requires that the statute be applied as written when the alleged conduct took place because the legislature did not "provide for its retroactive effect." [DE 20-1 at 73]. They contend that the amendment to the FIA statute "completely changed an element," therefore it is "substantive," not "remedial or procedural." [*Id.*]. Plaintiffs respond that the amendment "did not alter a single substantive element" of the statute and merely "removed a procedural hurdle." [DE 25 at 121]. As a result, Plaintiffs assert that the amended version of the statute applies retroactively because it is both remedial and procedural, not substantive. [*Id.* at 124].

As a general rule, in Kentucky, "the amended version of a statute [is not] applied retroactively to events which occurred prior to the effective date of the amendment unless the amendment expressly provides for retroactive application." *Martin v. Warrior Coal LLC*, 617 S.W.3d 391, 394 (Ky. 2021) (quoting *Commonwealth Dep't of Agric. v. Vinson*, 30 S.W.3d 162, 168 (Ky. 2000)). But procedural and remedial amendments are a carve out to this rule. *Spurlin v. Adkins*, 940 S.W.2d 900, 901 (Ky. 1997) (explaining that "legislation has been applied to causes of action which arose before its effective date, in the absence of an express declaration that the provision is to be so applied" when the amendment "was remedial or procedural in nature and [retroactive application] was consistent with the legislative intent"); *Noland v. Dep't of Corr.*, 266 S.W.3d 249, 250 (Ky. App. 2008) ("Remedial or procedural statutes can be retroactively applied in the absence of an express declaration of retroactive application if consistent with the legislative intent.") (quoting *Harper v. Kentucky Dep't of Corr.*, No. 2003-CA-002447-MR, 2005 WL 789140, at *2 (Ky. App. 2005)). Accordingly, if the amendment to the Kentucky insurance fraud

statute was remedial or procedural, rather than substantive, it would apply retroactively to the alleged conduct in this case.

First, the amendment to the statute was not procedural. The Kentucky Supreme Court has explained that "procedural amendments" are "[t]hose amendments which apply to the in-court procedures and remedies which are used in handling pending litigation." *Rodgers v. Com.*, 285 S.W.3d 740, 751 (Ky. 2009) (quoting *Vinson*, 30 S.W.3d at 168–69). The requirement of a criminal conviction (or lack of a requirement) does not deal with "in-court procedures and remedies," and so it is not procedural. Rather than altering "procedures or remedies" for "handling *pending* litigation," the amendment changes when a civil cause of action can be brought at all. *Id.* (emphasis added).

Second, whether the amendment is remedial is a much closer question. The Kentucky Supreme Court has cited the following passage approvingly in holding that a statute was remedial:

> A retrospective law, in a legal sense, is one which takes away or impairs vested rights acquired under existing laws, or which creates a new obligation and imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past. Therefore, despite the existence of some contrary authority, remedial statutes, or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of such rights, do not normally come within the legal conception of a retrospective law, or the general rule against the retrospective operation of statutes. In this connection it has been said that a remedial statute must be so construed as to make it effect the evident purpose for which it was enacted, so that if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied although the statute does not in terms so direct, unless to do so would impair some vested right or violate some constitutional guaranty. 73 Am. Jur. 2d *Statutes* § 354 (1974) (Footnotes omitted.)

*Peabody Coal Co. v. Gossett*, 819 S.W.2d 33, 36 (Ky. 1991) ("[I]t can be seen from the above commentary that since the 1987 amendment to KRS 342.125 is remedial, it does not come within the legal conception of a retrospective law nor the general rule against the retrospective operation of statutes."). The Kentucky Supreme Court further defined how to identify a remedial statute in

5

*Kentucky Ins. Guar. Ass'n v. Jeffers ex rel. Jeffers*, explaining that "[r]emedial means no more than the expansion of an existing remedy without affecting the substantive basis, prerequisites, or circumstances giving rise to the remedy." 13 S.W.3d 606, 609 (Ky. 2000). It then cited *Black's Law Dictionary*, (6th ed. 1990) as "a clear and unequivocal guideline for identifying remedial statutes":

> The underlying test to be applied in determining whether a statute is penal or remedial is whether it primarily seeks to impose an arbitrary, deterring punishment upon any who might commit a wrong against the public by a violation of the requirements of the statute, or whether the purpose is to measure and define the damages which may accrue to an individual or class of individuals, as just and reasonable compensation for a possible loss having a causal connection with the breach of the legal obligation owing under the statute to such individual or class.

*Id.* at 609–10. The Kentucky Supreme Court also relied on the following passage:

> Legislation which has been regarded as remedial in its nature includes statutes which abridge superfluities of former laws, remedying defects therein, or mischiefs thereof, whether the previous difficulties were statutory or a part of the common law. Remedial legislation implies an intention to reform or extend existing rights, and has for its purpose the promotion of justice and the advancement of public welfare and of important and beneficial public objects. The term applies to a statute giving a party a remedy where he had none, or a different one, before. Another common use of the term "remedial statute" is to distinguish it from a statute conferring a substantive right.

*Id.* at 610 (quoting 73 Am. Jur. 2d *Statutes* § 11 (1974)). The *Jeffers* court then synthesized Kentucky case law and secondary sources, summarizing them in a "two-step inquiry: (1) Is the amendment limited to the furtherance, facilitation, improvement, etc., of an existing remedy; and (2) If so, does it impair a vested right." *Id.* If a statutory amendment satisfies this test, it applies retroactively, so long as it "is consistent with the evident purpose of the statutory scheme." *Id.*

Applying these principles, the amendment does not necessarily create a new obligation or impose a new duty because the same underlying conduct remains prohibited by the FIA statute. The amendment did not alter any of the underlying conduct considered criminal—only a

6

prerequisite to civil recovery. *See Thaqi v. Jenifer*, 377 F.3d 500, 502 (6th Cir. 2004) ("A statute has retroactive effect when it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past."); *Bagsarian v. Parker Metal Co.*, 282 F. Supp. 766, 769 (N.D. Ohio 1968) ("A remedial statute is generally defined as one which neither enlarges nor impairs substantive rights, but rather relates to the means and procedure for enforcing those rights."). In that sense, the removal of the criminal conviction requirement could be viewed as a mere extension of an existing right to promote justice and advance public welfare. One of the definitions of a remedial amendment cited in *Jeffers* encompasses amendments that give a party a remedy "where he had none." *Id.* In a literal sense, that is what happened here when the legislature removed the requirement for a criminal conviction.

But, on the other hand, the amendment does attach a new legal consequence because civil penalties can now be pursued without a criminal conviction. *See Martin v. Hadix*, 527 U.S. 343, 357–58 (1999) ("The inquiry into whether a statute operates retroactively demands a common sense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.'") (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 270 (1994)); *Landgraf*, 511 U.S. at 245 ("[W]here the new statute . . . would impair rights a party possessed when he acted, increase his liability for past conduct, or impose new duties with respect to transactions already completed[,] the traditional presumption teaches that the statute does not govern absent clear congressional intent favoring such a result."). As Plaintiffs point out, the United States District Court for the Eastern District of Kentucky has treated the old criminal conviction requirement of the statute as "words of limitation" on the "specific civil remedy" provided. *Hall v. MLS Nat'l Med. Evaluations, Inc.*, No. CIV.A. 05-185-JBC, 2006 WL 2367139,

7

at *6 (E.D. Ky. Aug. 15, 2006). Put differently, *Hall* interpreted the criminal conviction requirement as a "prerequisite . . . giving rise to the remedy," which *Jeffers* described as falling into the substantive amendment category. 13 S.W.3d at 609.

Considered on its face, whether the amendment was substantive or remedial seems ambiguous. *See Bagsarian*, 282 F. Supp. at 769 ("[T]he distinction between remedial and substantive legislation is rather uncertain[.]"). But Defendants make a compelling argument that the removal of the criminal conviction requirement is substantive because it increases "liability for past conduct" by "reduc[ing] the burden of proof." [DE 26 at 139]. There is precedent for this argument. In *Vinson*, the Kentucky Supreme Court held that "[a]lthough there is no Kentucky case to substantiate the proposition that laws relating to the burden of proof constitute substantive law and not procedural law, we find that other jurisdictions have so concluded. We agree." 30 S.W.3d at 169–70. The Kentucky Supreme Court explained that "[t]he changes in causation and weight of evidence were changes in substantive law" and "[t]he change in the burden of proof was also a change in substantive law" where the statute in question was amended to reduce the standard of proof from "clear and convincing evidence" to a "preponderance of the evidence." *Id.* at 169. In reaching its conclusion in *Vinson*, the court was careful to note that "[i]t should be abundantly clear that the duties imposed on the Department of Agriculture under KRS 60.102 did not change" and the "underlying basis for both the original Act and the amendment remains in effect." *Id.* at 170. Thus, *Vinson* is a close analog to this case. In both cases, the underlying conduct that is prohibited remained the same, but an amendment changed the standard of proof required to recover damages. While the amendment in *Vinson* did so more explicitly, the removal of the criminal conviction requirement in this case created the same effect, albeit indirectly.

Bearing *Vinson* in mind, it is clear that the amendment did not "expand an existing remedy" without affecting the "prerequisites, or circumstances giving rise to the remedy" and is not "limited to the furtherance, facilitation, improvement, etc., of an existing remedy."[2] *Jeffers*, 13 S.W.3d at 609, 610. Instead, the amendment is substantive because it "change[d] and redefine[d] the out-of-court rights" of the parties, and so the normal "strong presumption that statutes operate prospectively and that retroactive application of statutes will be approved only if it is absolutely certain the legislature intended such a result" must apply to this case. *Vinson*, 30 S.W.3d at 168. Accordingly, the Court holds that the amendment to the statute was substantive, not procedural or remedial.

### III. Conclusion

Because the amendment was substantive, the pre-amendment version of Kentucky's FIA statute applies to Defendants' alleged conduct in this case. Therefore, without the criminal conviction required by that version of the statute, "no law supports the claim made" in Count III which poses "an insurmountable bar to relief," and Count III must be dismissed. *Southfield Educ. Ass'n*, 570 F. App'x at 487 (citing *Twombly*, 550 U.S. at 561–64).

For the reasons explained, and the Court being otherwise sufficiently advised, the motion to dismiss Count III is **GRANTED**.

February 9, 2024

cc: counsel of record

Rebecca Grady Jennings, District Judge
United States District Court

---

[2] This result also accords with the "clear and unequivocal guideline for identifying remedial statutes" used in *Jeffers*, in that the amendment seeks more to impose an "arbitrary, deterring punishment upon any who might commit a wrong against the public by a violation of the requirements of the statute" than simply to "measure and define the damages which may accrue to an individual or class of individuals." 13 S.W.3d at 609–10 (quoting *Black's Law Dictionary*, (6th ed. 1990)).

9